**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

YOUSSIF KAMAL; GILLIAN
NEELY; RICHARD LICHTEN;
SUSAN COX; NICK TOVAR;
MICHELE KINMAN; TERI
BROWN, on their own behalf and on
behalf of all others similarly situated,
*Plaintiffs-Appellants,*

v.

EDEN CREAMERY, LLC, DBA Halo
Top Creamery; JUSTIN T.
WOOLVERTON,
*Defendants-Appellees.*

No.21-56260

D.C. No.
3:18-cv-01298-
TWR-AGS

OPINION

Appeal from the United States District Court
for the Southern District of California
Todd W. Robinson, District Judge, Presiding

Argued and Submitted December 5, 2022
Pasadena, California

Filed December 21, 2023

Before: Marsha S. Berzon, Ryan D. Nelson, and Bridget S.
Bade, Circuit Judges.

Opinion by Judge Bade;
Partial Concurrence and Partial Dissent by Judge R. Nelson

## SUMMARY[*]

### Jurisdiction / Amended Complaint

The panel affirmed in part and reversed in part the district court's dismissal of plaintiffs' complaint alleging that Eden Creamery, LLC underfilled its pints of ice cream.

The district court denied plaintiffs' motion for leave to file a second amended complaint in order to add a new theory of liability (fraud by omission) and a new defendant (Wells Enterprises), and their subsequent motion to voluntarily dismiss their putative class action complaint without prejudice. After denying plaintiffs' motions, the district court dismissed plaintiffs' individual claims with prejudice and the class claims without prejudice.

As an initial matter, the panel rejected defendants' contention that there was no jurisdiction to review the district court's order denying plaintiffs leave to file a second amended complaint. After the district court entered its final order of dismissal with prejudice and plaintiffs appealed, the earlier, non-final order denying plaintiffs' motion for leave to file a second amended complaint merged with the judgment and became appealable.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Turning to the merits, the panel held that plaintiffs failed to show good cause, as required by Fed. R. Civ. P. 16(b), to amend their complaint to add Wells Enterprises as a defendant and a new theory of fraud by omission. However, the district court abused its discretion by denying plaintiff's motion to dismiss without prejudice, and instead dismissing with prejudice, because defendants failed to demonstrate that they would suffer legal prejudice if the case were dismissed without prejudice.

Accordingly, the panel remanded with instructions to dismiss the action without prejudice. Because a district court can award costs and attorney's fees as a condition of dismissal without prejudice under Fed. R. Civ. P. 41(a)(2), the panel directed the district court to consider whether any terms should be imposed as a condition of dismissal, such as an appropriate amount of costs and fees.

Concurring in part and dissenting in part, Judge R. Nelson concurred in Section IV of the majority opinion (affirming the district court's holding that plaintiffs failed to show good cause to amend their complaint) and Section V.E (holding that fees and costs may be awarded as conditions of a Rule 41 voluntary dismissal). He dissented from Sections V.A-D because he would hold that defendants have shown a proper legal interest to warrant dismissal with prejudice.

**COUNSEL**

Andrew J. Brown (argued) and Brian J. Ellsworth, Law Offices of Andrew J. Brown, San Diego, California, for Plaintiffs-Appellants.

Dale J. Giali (argued), Keri E. Borders, King and Spalding LLP, Los Angeles, California; Daniel D. Queen, Mayer Brown LLP, Los Angeles, California; Kevin S. Ranlett, Mayer Brown LLP, Washington, D.C.; for Defendants-Appellees.

**OPINION**

BADE, Circuit Judge:

Plaintiffs-Appellants Youssif Kamal, Gillian Neely, Richard Lichten, Susan Cox, Nick Tovar, Michele Kinman, and Teri Brown (collectively, Plaintiffs) appeal the district court's orders denying their motion for leave to file a second amended complaint and their subsequent motion to voluntarily dismiss their putative class action complaint without prejudice. After denying Plaintiffs' motions, the district court dismissed Plaintiffs' individual claims with prejudice and the class claims without prejudice. On appeal, Plaintiffs argue that the district court abused its discretion by finding that they were not diligent and therefore denying their motion to file a second amended complaint, and by denying their motion for voluntary dismissal without prejudice when Defendants-Appellants, Eden Creamery, LLC and Justin Woolverton (collectively, Defendants), failed to demonstrate that they would suffer legal prejudice if the case were dismissed without prejudice. We conclude

that the district court did not abuse its discretion by denying the motion to file a second amended complaint, but because Defendants did not show legal prejudice as our case law requires, the district court abused its discretion by denying Plaintiffs' motion for dismissal without prejudice. Accordingly, we affirm in part, reverse in part, and remand.

I

At the time Plaintiffs filed their initial complaint, Eden Creamery owned and manufactured Halo Top, a low-calorie ice cream sold by the pint. This case arises from complaints that the pints were not completely full when purchased. Several of the named plaintiffs—before filing this lawsuit—complained directly to Defendants about this problem, and Defendants explained that "at some point in the supply chain, the ice cream slightly melts and then refreezes," causing "the ice cream [to] condense[] down, leaving space inside the pint." Defendants maintained this explanation throughout this case and on appeal, asserting that "a pint of Halo Top might appear less than full when opened [because] of a latent chemical reaction known as 'shrinkage' that impacts all ice cream."

Apparently unsatisfied with this explanation, Plaintiffs filed their initial class action complaint against Eden Creamery in June 2018. The theory behind Plaintiffs' complaint was that Eden Creamery "underfills" its pints of Halo Top, so while Plaintiffs "paid for a full pint," they "did not receive a full pint."

After Eden Creamery moved to dismiss, Plaintiffs filed their first amended complaint "as a matter of course" in September 2018, asserting various state law fraud, consumer protection, and unfair business practice claims. *See* Fed. R. Civ. P. 15(a)(1). The first amended complaint included

additional factual details, added several causes of action, and named Justin Woolverton, Halo Top's CEO, as a defendant, but its key allegations remained the same, reiterating the "underfilled" theory advanced in the initial complaint.

Defendants again moved to dismiss, arguing, among other things, that Plaintiffs' underfilling theory was factually unsound. Defendants argued that their pints were "filled to maximum capacity" and "the alleged, random product shrinkage, if any, resulted from alleged handling by third parties, such as distributors, retailers, or consumers."

The district court largely denied the motion to dismiss, concluding that Plaintiffs plausibly alleged their underfilling theory. However, the court dismissed any "fraud by omission claim," finding that although Plaintiffs' fraud claim "nominally refer[red] to alleged omissions," Plaintiffs failed to describe any omissions. Shortly thereafter, the court, with input from the parties, entered a scheduling order setting November 1, 2019, as the deadline "to join other parties [or] to amend the pleadings."

During discovery, Plaintiffs' theory of liability changed. Plaintiffs shifted from the "underfilled" theory to a "fraud by omission" theory. Under this new theory, the problem with the ice cream was not that the pints were underfilled at the time of manufacturing, but that Halo Top was "inherently defective." According to Plaintiffs, Halo Top's ingredients and production methods render the product extremely vulnerable "to changes in temperature and altitude," such that it cannot "withstand the ordinary distribution and retail practices within the ice cream industry." Under Plaintiffs' new theory, Defendants intentionally concealed this defect and failed to inform their customers "that there was a

substantial risk that the Halo Top ice cream pint would be underfilled" at the time of purchase.

On June 25, 2020, approximately six weeks before the deadline to complete discovery and eight months after the deadline to amend the pleadings, Plaintiffs moved to amend their complaint to incorporate this new theory and to add Wells Enterprises, the company that purchased Halo Top from Eden Creamery, as a defendant. The district court denied the motion in December 2020, concluding that (1) Plaintiffs were not diligent in seeking leave to file their proposed second amended complaint and therefore failed to show "good cause" to extend the deadline to amend the pleadings, and (2) allowing amendment would prejudice Defendants because discovery would have to be reopened, which would increase the cost of litigation and delay resolution of the case.

Shortly after the court denied the motion to file a second amended complaint, Plaintiffs moved to voluntarily dismiss their claims without prejudice under Federal Rule of Civil Procedure 41(a)(2). They candidly acknowledged that they sought dismissal to pursue their new fraud theory "in a separate lawsuit." Defendants did not oppose dismissal, but they requested that the district court dismiss the case with prejudice or impose several conditions for dismissal without prejudice, including barring Plaintiffs from pursuing claims in a new case based on the "underfilling" theory, requiring Plaintiffs to pay some of Defendants' attorney's fees, limiting discovery in the new case, and requiring that the new case be assigned to the same judge.

After a hearing and supplemental briefing, the district court denied the motion for voluntary dismissal without prejudice. The court concluded that dismissing the action

without prejudice "would result in legal prejudice to Defendants." In the court's view, Plaintiffs' motion for dismissal without prejudice was "intended to negate" the court's prior denial of leave to amend, and the court reasoned that "[i]f allowing Plaintiffs to file the Proposed Second Amended Complaint in this action would be prejudicial to Defendants, then permitting Plaintiffs to file the Proposed Second Amended Complaint as a new lawsuit would be similarly prejudicial." The court also concluded that Plaintiffs had essentially asked the court "to employ the discretion granted in Rule 41(a)(2) to accomplish indirectly" what the court "held cannot be accomplished directly under Rule 16(b)"—extend the scheduling order's deadline to amend the pleadings without a showing of good cause.

The district court advised Plaintiffs that they could either accept dismissal with prejudice or continue litigating the action in the district court based on the first amended complaint. Plaintiffs informed the court that they did "not intend to continue litigating" the action in the district court, and the court dismissed Plaintiffs' individual claims with prejudice and the putative class claims without prejudice. Plaintiffs timely appealed.

## II

We review for an abuse of discretion a district court's denial of leave to amend pleadings, *Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 760 (9th Cir. 2017), and its decision on a motion for voluntary dismissal, *Westlands Water Dist. v. United States*, 100 F.3d 94, 96 (9th Cir. 1996).

## III

As an initial matter, we must address Defendants' contention that we lack jurisdiction to review the district

court's order denying Plaintiffs' motion for leave to file a second amended complaint.  Defendants agree that we have jurisdiction to review the district court's order denying Plaintiffs' motion for dismissal without prejudice, but they argue that Plaintiffs "cannot also appeal the earlier interlocutory denial of leave to amend."  Defendants argue that allowing such an appeal would circumvent the discretionary certification process for interlocutory appeals under 28 U.S.C. § 1292(b).[1]

This argument fails because Plaintiffs are not appealing from an interlocutory order.  Instead, Plaintiffs are appealing the district court's final order dismissing their claims with prejudice.  *See* 28 U.S.C. § 1291 (courts of appeals "have jurisdiction of appeals from all final decisions of the district courts").  And while "[a]n order denying leave to amend a complaint is not appealable," *Hall v. City of Los Angeles*, 697 F.3d 1059, 1070 (9th Cir. 2012), that is because "[s]uch orders, as a class, contemplate further proceedings in the district court," and "review is available after the final judgment, into which they merge," *id.* (quoting *Bradshaw v. Zoological Soc'y of San Diego*, 662 F.2d 1301, 1304 (9th Cir. 1981)).  Here, after the district court entered its final order of dismissal with prejudice and Plaintiffs appealed, the

---

[1] Section 1292(b) provides a mechanism for a discretionary appeal of an interlocutory order.  The statute provides that if a district judge concludes that an order entered in a civil case, which is not otherwise appealable, "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," the judge "shall so state" in that order.  28 U.S.C. § 1292(b).  The court of appeals "may . . . in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order."  *Id*.

earlier, non-final order denying Plaintiffs' motion for leave to file a second amended complaint "merge[d] with the judgment" and became reviewable.  *Id*. ("An appeal from a final judgment draws in question all earlier, non-final orders and rulings which produced the judgment." (quoting *Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir. 1984))).

Defendants also argue that because Plaintiffs moved for voluntary dismissal after the district court denied leave to file a second amended complaint, we lack jurisdiction to hear an appeal of that order because Plaintiffs' tactics are akin to the "voluntary-dismissal tactic" that the Supreme Court rejected in *Microsoft Corp. v. Baker*, 582 U.S. 23, 37 (2017). This argument fails because, unlike in *Microsoft*, the plaintiffs here did not seek a voluntary dismissal with prejudice to generate a final judgment for the purpose of appealing the earlier interlocutory order.

In *Microsoft*, after the district court struck the plaintiffs' class allegations from the complaint, and the court of appeals denied a permissive interlocutory appeal of that order under Federal Rule of Civil Procedure 23(f), the plaintiffs voluntarily dismissed their claims *with prejudice*, but reserved the right to revive their claims if the court of appeals reversed the district court's denial of class certification.  582 U.S. at 27, 33–35.  The Court rejected this "tactic" and held that a voluntary dismissal with prejudice, after the denial of a permissive interlocutory appeal under Rule 23(f), is not a final appealable decision under § 1291.**[2]**  *Id.* at 37.  The

---

[2] In 1998, the Court approved Rule 23(f), which authorizes "permissive interlocutory appeal" of class certification orders at the discretion of the courts of appeals.  *Microsoft*, 582 U.S. at 30.  Rule 23(f) was "[s]een as

Court explained that allowing such an appeal would severely undermine "Rule 23(f)'s careful calibration" and "Congress' designation of rulemaking as the preferred means for determining whether and when prejudgment orders should be immediately appealable." *Id*. at 40 (citation and internal quotation marks omitted). Further, the Court stated that it was of "prime significance" that the plaintiffs' "dismissal tactic undercuts Rule 23(f)'s discretionary regime." *Id*. at 39 (citation omitted). In addition, *Microsoft* emphasized that this dismissal tactic "invites protracted litigation and piecemeal appeals" by giving the plaintiff exclusive control over "the decision whether an immediate appeal will lie." *Id.* at 37; *see also id.* at 41–42 (expressing concern over the "one-sidedness" of such a tactic).

Here, the district court dismissed the case with prejudice *over Plaintiffs' objection*. Plaintiffs never sought dismissal with prejudice; instead, they sought dismissal *without*

---

a response to" *Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978), in which the Court rejected the "death-knell" doctrine that had allowed an appeal as of right, in some circumstances, of an order denying class certification. *Id*. at 27–28, 30. The Court recognized that after *Coopers & Lybrand*, "a party seeking immediate review of an adverse class-certification order had no easy recourse." *Id*. at 30. The Federal Rules of Civil Procedure did not provide for appeals of interlocutory orders in class actions, so parties were limited to seeking a discretionary appeal under § 1292(b) or a writ of mandamus. *Id*. Therefore, pursuant to § 1292(e), which authorizes the Court to promulgate rules for appeals from interlocutory orders "not otherwise provided for" in § 1292, the Court approved Rule 23(f). *Id*. at 30–31 (quoting 28 U.S.C. § 1292(e)). The Court further explained that Rule 23(f) "was the product of careful calibration" that sought to provide "greater protection against improvident certification decisions than § 1292(b)" offered, while avoiding the possible abuse and increased delay and expense of allowing an appeal as of right from interlocutory class certification orders. *Id*. at 31–32 (citation omitted).

prejudice, which would not have resulted in a final appealable order. *See Wakefield v. Thompson*, 177 F.3d 1160, 1162 (9th Cir. 1999) ("[D]ismissals with prejudice generally constitute final orders, while dismissals without prejudice generally do not."). Plaintiffs thus never sought to employ the dismissal tactic at issue in *Microsoft*. Considering their appeal of the denial of the motion to amend alongside their appeal from the dismissal with prejudice does not raise the concerns articulated in *Microsoft* relating to the use of voluntary dismissals as an end-run around the rules against interlocutory appeals. Therefore, we have jurisdiction to review the district court's denial of Plaintiffs' motion for leave to file a second amended complaint.

## IV

Having confirmed our jurisdiction, we consider whether the district court abused its discretion by denying Plaintiffs' motion to file a second amended complaint. When a district court enters a pretrial scheduling order establishing a deadline for amending the pleadings, as the court did here, a motion to amend is governed by Rule 16(b). *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). Under Rule 16(b), a plaintiff "must show good cause" for failing to amend the complaint "before the time specified in the scheduling order expired." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). The good cause standard "primarily considers the diligence of the party seeking the amendment." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) (quoting *Johnson*, 975 F.2d at 609). "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking

modification," and "[i]f that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609.

This issue raises two questions: (1) whether Plaintiffs established good cause to amend their complaint to add Wells Enterprises as a defendant, and (2) whether Plaintiffs established good cause to amend their complaint to allege the new theory of fraud by omission. We address each in turn.

## A

Applying the Rule 16(b) good cause standard, we conclude the district court did not abuse its discretion in finding that Plaintiffs were not diligent in seeking to add Wells Enterprises as a defendant. The district court correctly observed that Plaintiffs were on notice that Defendants sold Halo Top to Wells Enterprises eight months before Plaintiffs moved to file a second amended complaint on June 25, 2020. On October 8, 2019—even before the November 1, 2019, deadline to amend the pleadings—Defendants disclosed the sale in the parties' joint discovery plan. And as the district court recognized, Plaintiffs referred to the sale in their own filings, confirming they were on notice. Nevertheless, Plaintiffs waited until June 25, 2020, to seek leave to file a second amended complaint adding Wells Enterprises as a defendant.

Although Plaintiffs argue that they needed to know "details of the transaction" to "allege successor liability," and that they "alleged fraud against Wells [Enterprises] for its own conduct after the sale of Halo Top" and "could not have known the facts underlying that fraud" without discovery, "[t]he burden" lies with the plaintiff "to prosecute his case properly." *Johnson*, 975 F.2d at 610. And even assuming this information was necessary to amend the

complaint, Plaintiffs offer no explanation for why they needed eight months to obtain it and move to amend the complaint. Accordingly, the district court did not abuse its discretion in concluding that Plaintiffs did not act diligently and therefore failed to demonstrate good cause to amend the complaint and add Wells Enterprises as a defendant after the scheduling order's deadline. *See id.* at 606–10 (concluding that the plaintiff, who moved to join another defendant four months after the deadline to amend pleadings, failed to demonstrate good cause when the original defendant indicated in its answer and response to interrogatories— before the amendment deadline—that it did not own the ski resort at which the plaintiff was injured).

B

Similarly, the district court did not abuse its discretion in denying Plaintiffs leave to amend the complaint to incorporate their new theory of fraud by omission. Plaintiffs assert that the district court did not find that any of the facts underlying this theory were known to Plaintiffs "at any time before the Motion to Amend." The district court's order refutes this assertion. The district court recognized that Defendants produced the "key documents" that Plaintiffs cited as the basis for their new fraud theory on January 31, 2020, five months before Plaintiffs sought leave to amend their complaint. The district court observed that "twelve of the sixteen new documents referenced" in the proposed second amended complaint were contained in the January 31, 2020, production, "which comprised 12,224 pages." These documents, which, according to Plaintiffs, "prove[d]" their new theory and prompted the filing of their motion, included details of a study that allegedly revealed the flaws in Halo Top's ingredients and production methods and emails purporting to show that Defendants knew of this

problem but misled their distributors, retailers, and customers about it. In sum, these documents allegedly established the core of Plaintiffs' new fraud theory.

While recognizing that "document review takes time," the district court concluded that Plaintiffs had not met their burden to demonstrate good cause because they "failed to account for the five months [that elapsed] between the production of these key documents" and their motion to amend the complaint. Similarly, although Plaintiffs deposed Eden Creamery just prior to filing the motion to amend the complaint, the court observed that Plaintiffs "fail[ed] to articulate what new facts uncovered at the deposition were critical to their request." *See Jackson v. Bank of Haw.*, 902 F.2d 1385, 1388 (9th Cir. 1990) (rejecting, under Rule 15 amendment standard, plaintiffs' argument that "the evidence of the [defendant's] representations, promises, and nondisclosures were not 'fully flushed out'" until later in the discovery period given that plaintiffs "cite[d] no facts or theories gleaned from the additional discovery period to support this contention").

The district court also noted that it had been "clear from the outset" of the case that "'shrinkage' would be a key issue in one way or another." In their motion to dismiss the first amended complaint—filed November 12, 2018—Defendants argued that it "would be physically impossible" to increase the fill of pints "that are already filled to maximum capacity" and that Plaintiffs failed to allege facts suggesting Defendants "could avoid potential melting and refreezing of the products by third parties." In other words, Defendants asserted that Plaintiffs' initial "underfilling" theory was erroneous because the pints were full at the time of manufacturing, but the ice cream would melt and refreeze during the distribution process—the very theory Plaintiffs

sought to allege almost two years later. Additionally, the district court recognized that Defendants informed "most of [the] named plaintiffs"—before litigation started—that shrinkage was the reason for apparently less-than-full pints. *See Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) (even under Rule 15's liberal standard, "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action").

Considering the district court's findings, and in particular its determination that Plaintiffs possessed the "key documents" forming the basis of their new theory of fraud in January 2020 yet "failed to account for the five months" between receiving the documents and filing their motion to amend in June 2020, the court's finding that Plaintiffs were not diligent was not "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *City of Los Angeles v. San Pedro Boat Works*, 635 F.3d 440, 454 (9th Cir. 2011) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc)). Therefore, the district court did not abuse its discretion in denying Plaintiffs leave to amend their complaint to incorporate this new theory of liability.[3]

---

[3] Our conclusion that the district court did not err by finding that Plaintiffs were not diligent resolves "the focus of the inquiry" on whether the district court abused its discretion by denying leave to file an amended complaint and "the inquiry should end" there. *Johnson*, 975 F.2d at 609. Therefore, we need not address the district court's alternative finding that allowing Plaintiffs leave to amend would prejudice Defendants.

V

Finally, we consider whether the district court abused its discretion by denying Plaintiffs' motion for voluntary dismissal without prejudice. Generally, Rule 41(a)(2) grants a district court discretion to dismiss a case with or without prejudice.[4]  *See* Fed. R. Civ. P. 41(a)(2) ("Unless the order states otherwise, a dismissal under this paragraph . . . is without prejudice."); *Hargis v. Foster*, 312 F.3d 404, 407 (9th Cir. 2002) ("Rule 41 vests the district court with discretion to dismiss an action at the plaintiff's instance 'upon such terms and conditions as the court deems proper.' That broad grant of discretion does not contain a preference for one kind of dismissal or another.") (quoting Fed. R. Civ. P. 41(a)(2)).

But we have cabined that discretion by repeatedly holding that "[w]here the request is to dismiss without prejudice, '[a] District Court should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result.'"[5] *WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*,

---

[4] Rule 41(a) governs a plaintiff's ability to voluntarily dismiss an action. Under Rule 41(a)(1), a plaintiff has "an absolute right" to voluntarily dismiss an action "prior to service by the defendant of an answer or a motion for summary judgment." *Wilson v. City of San Jose*, 111 F.3d 688, 692 (9th Cir. 1997). But once the defendant serves an answer or motion for summary judgment (and unless the parties stipulate to dismissal), a plaintiff "must file a motion for voluntary dismissal under Rule 41(a)(2)." *Id.*  Rule 41(a)(2), in turn, permits a plaintiff to voluntarily dismiss an action "only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2).

[5] Our case law is consistent with, and indeed stems from, longstanding Supreme Court precedent confirming that, in the absence of prejudice to

655 F.3d 1039, 1058–59 n.6 (9th Cir. 2011) (second alteration in original) (quoting *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001)), *abrogated on other grounds by Lorenzo v. SEC*, 139 S. Ct. 1094 (2019); *Westlands Water Dist.*, 100 F.3d at 96 ("When ruling on a motion to dismiss without prejudice, the district court must determine whether the defendant will suffer some plain legal prejudice as a result of the dismissal."); *Stevedoring Servs. of Am. v. Armilla Int'l B.V.*, 889 F.2d 919, 921 (9th Cir. 1989) ("The purpose of [Rule 41(a)(2)] is to permit a plaintiff to dismiss an action without prejudice so long as the defendant will not be prejudiced or unfairly affected by dismissal." (citation omitted)).

---

the defendant, voluntary dismissal should be without prejudice. *See Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 217 (1947) (stating that "[t]raditionally," the plaintiff had "an unqualified right, upon payment of costs, to take a nonsuit in order to file a new action after further preparation, unless the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit," and Rule 41 "preserves" this right); *Jones v. SEC*, 298 U.S. 1, 19 (1936) (stating it was "very clear" that "the right of a complainant to dismiss his bill without prejudice, on payment of costs, was of course," except for when "dismissal of the bill would prejudice the defendants in some other way than by the mere prospect of being harassed and vexed by future litigation of the same kind" (citation omitted)); *In re Skinner & Eddy Corp.*, 265 U.S. 86, 93–94 (1924) (explaining that denying a plaintiff "the right to dismiss his bill without prejudice at his own costs" was reserved for when the defendant was in a position "to seek affirmative relief" and "would be prejudiced by being remitted to a separate action"); *see also Home Owners' Loan Corp. v. Huffman*, 134 F.2d 314, 317 (8th Cir. 1943) (explaining that "[R]ule 41 is declaratory of" and "intended only to clarify and make definite" the longstanding rule "that a plaintiff may dismiss his case without prejudice" upon payment of costs when the defendant will not suffer legal prejudice).

"Legal prejudice" is a term of art: it means "prejudice to some legal interest, some legal claim, some legal argument." *Westlands Water Dist.*, 100 F.3d at 97. But "[u]ncertainty because a dispute remains unresolved is not legal prejudice," *id.*, and "the threat of future litigation which causes uncertainty is insufficient to establish plain legal prejudice," *id.* at 96. Additionally, "the mere inconvenience of defending another lawsuit does not constitute plain legal prejudice," *Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143, 145 (9th Cir. 1982), and "plain legal prejudice does not result merely because the defendant will be inconvenienced by having to defend in another forum or where a plaintiff would gain a tactical advantage by that dismissal," *Lenches*, 263 F.3d at 976.

## A

Relying on these cases, Plaintiffs argue that the district court abused its discretion by denying their motion for dismissal without prejudice because Defendants failed to show that they would suffer legal prejudice as a result. Defendants counter that "Plaintiffs err from the outset by misstating the test for whether a voluntary dismissal of claims may be made with or without prejudice." Defendants argue that Plaintiffs "conflate" the separate determinations the court must make when ruling on a motion for voluntary dismissal.

In Defendants' view, the district court first determines whether dismissal should be granted at all and considers whether the defendant will suffer legal prejudice only at this first step of the analysis. If the defendant cannot show legal prejudice at the first step, the court must allow dismissal and proceed to the second step of the analysis—whether dismissal should be with or without prejudice. Defendants

further argue that at the second step, the district court can consider factors other than "legal prejudice," and therefore dismissal may be with prejudice, even if the defendant would suffer no legal prejudice from a dismissal without prejudice.

We conclude that Plaintiffs correctly state the standard that applies to voluntary dismissal under Rule 41(a)(2), and we reject Defendants' argument that dismissal may be with prejudice, even if the defendant would suffer no legal prejudice from a dismissal without prejudice, because it is directly refuted by our case law. In *WPP Luxembourg Gamma Three Sarl*, we stated that a district court should grant a motion for dismissal without prejudice "unless a defendant can show that it will suffer some plain legal prejudice as a result." 655 F.3d at 1058–59 n.6 (quoting *Lenches*, 263 F.3d at 975). In *Stevedoring Services of America*, we explained that the purpose of Rule 41(a)(2) is "to permit a plaintiff to dismiss an action without prejudice so long as the defendant will not be prejudiced or unfairly affected by dismissal." 889 F.2d at 921 (citation omitted). And in *Westlands Water District*, because we concluded that the defendants had failed to show they would suffer legal prejudice from a dismissal without prejudice, we reversed not only the district court's denial of the plaintiffs' motion for dismissal without prejudice but also its entry of summary judgment for defendants, and remanded "with instructions to enter an order dismissing the action without prejudice." 100 F.3d at 95–96.

Similarly, Defendants misread our decision in *Smith v. Lenches*. Contrary to Defendants' assertion, that case does not support their argument that a court may dismiss a plaintiff's claims with prejudice, even if the defendant would suffer no legal prejudice from a dismissal without

prejudice.[6]   That argument was simply not presented in
*Lenches*.  There, the *defendants appealed* the dismissal of
the plaintiffs' federal securities claims *with prejudice*,
arguing that they suffered legal prejudice from dismissal
because they lost the procedural protections of the Private
Securities Litigation Reform Act (PSLRA) and because their
state law counterclaim was dismissed without prejudice.
263 F.3d at 974–75.  The plaintiffs, however, did not appeal
and we did not consider whether the district court should
have dismissed their claims without prejudice.

Instead, in rejecting the defendants' arguments, we
observed that this was the "rare case" in which the
defendants "achiev[ed] a complete victory in federal court"
by securing dismissal with prejudice of all federal claims
against them, yet "complain[ed] that they were entitled to
more: the right to proceed with their counterclaim."  *Id.* at
974.  We explained that the defendants would not suffer
legal prejudice from the dismissal of the plaintiffs' federal
claims, even though they would be required to litigate the
pending state law claims in state court, and the plaintiffs
"would gain a tactical advantage."  *Id*. at 976.  We also
explained that, even though the dismissal of the federal
securities claims meant that the defendants lost the
procedural protections of the PSLRA, "[b]ecause those

---

[6] In *Lenches*, the plaintiffs moved to voluntarily dismiss their federal
securities claims to pursue similar state law claims pending in state court.
263 F.3d at 974–75.  The district court dismissed the plaintiffs' claims
with prejudice.  *Id.* at 974.  Although it is not clear from our opinion in
*Lenches*, the briefing from the district court proceedings shows that the
plaintiffs sought dismissal without prejudice.  We grant Defendants'
motion to take judicial notice of the district court briefing in *Lenches*.
*See Ray v. Lara*, 31 F.4th 692, 697 n.4 (9th Cir. 2022) (granting motion
for judicial notice of court records from other cases).

claims were dismissed and are not continuing, the loss of procedural protections relating to them is not legal prejudice." *Id*. Finally, we noted that because the district court dismissed the plaintiffs' claims with prejudice "so they cannot be reasserted in another federal suit," that "only strengthen[ed] our conclusion that the dismissal caused no legal prejudice and was not an abuse of discretion." *Id*.

But the issue of whether dismissal of the plaintiffs' claims should have been with or without prejudice was not before us because the issue was not presented on appeal, *see id.* at 974, and therefore our decision in *Lenches* does not support Defendants' argument.

Undeterred by these cases, Defendants argue that when deciding whether dismissal should be with or without prejudice, the district court may consider other factors "not rising to the level of legal prejudice," such as "the defendant's effort and expense involved in preparing for trial" and "excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action," and may dismiss with prejudice if warranted by these considerations. But we have already rejected similar arguments. *See Westlands Water Dist.*, 100 F.3d at 97 ("We have explicitly stated that the expense incurred in defending against a lawsuit does not amount to legal prejudice."); *see also Hamilton*, 679 F.2d at 145–46 (rejecting argument that the plaintiff's claims should have been dismissed with prejudice because defendant "had begun trial preparations" and "was put to significant expense in preparing and filing its pleadings").[7]

---

[7] As our subsequent discussion reflects, a district court may condition a dismissal without prejudice on "on terms that the court considers

In sum, we have never held that the legal prejudice inquiry applies only when determining whether voluntary dismissal should be allowed at all, with or without prejudice; nor have we held that dismissal under Rule 41(a)(2) may be with prejudice, even when no legal prejudice would result from a dismissal without prejudice. We decline to do so now. Instead, as our case law makes clear, the district court must determine whether granting a motion for dismissal without prejudice would result in legal prejudice to the defendant and, if not, the motion should be granted. *WPP Lux. Gamma Three Sarl*, 655 F.3d at 1058–59 n.6; *Westlands Water Dist.*, 100 F.3d at 96; *Stevedoring Servs. of Am.*, 889 F.2d at 921.

## B

Alternatively, Defendants argue that "even if Plaintiffs were correct that the district court needed to find [that] some 'legal prejudice'" would result from a dismissal without prejudice, "such prejudice is present here." Specifically, Defendants argue that a dismissal without prejudice would cause them prejudice because Plaintiffs acknowledged that they intended to refile their claims in a subsequent lawsuit or lawsuits. Defendants further argue that the district court correctly concluded that dismissing Plaintiffs' claims without prejudice would allow Plaintiffs to circumvent the prior denial of leave to file a second amended complaint and would prejudice Defendants for the same reasons as allowing the second amended complaint: litigation would continue, preventing resolution of the case.

---

proper," Fed. R. Civ. P. 41(a)(2), and in setting such conditions may take into account considerations that fall short of legal prejudice. *See infra*, Part V.E.

But legal prejudice does not result when a plaintiff "merely gains some tactical advantage" from dismissal, *Hamilton*, 679 F.2d at 145, or when the defendant faces "the threat of future litigation which causes uncertainty," *Westlands Water Dist.*, 100 F.3d at 96, or when "the defendant will be inconvenienced by having to defend in another forum," *Lenches*, 263 F.3d at 976. Legal prejudice requires something more. In *Westlands Water District*, we surveyed cases from other courts for examples of legal prejudice and observed that "courts have examined whether a dismissal without prejudice would result in the loss of a federal forum, or the right to a jury trial, or a statute-of-limitations defense." 100 F.3d at 97 (collecting cases).[8] We

---

[8] Although we did not state whether a dismissal without prejudice in these circumstances would amount to legal prejudice, the cases we cited all concluded that there was no such prejudice. *See Westlands Water Dist.*, 100 F.3d at 97 (citing *Am. Nat'l Bank & Tr. Co. of Sapulpa v. Bic Corp.*, 931 F.2d 1411, 1412 (10th Cir. 1991) (affirming dismissal without prejudice and concluding that the defendant, who removed the case to federal court on diversity grounds, did not suffer legal prejudice when the plaintiff moved for voluntary dismissal, refiled in state court, and named additional defendants to prevent removal); *Manshack v. Sw. Elec. Power Co.*, 915 F.2d 172, 173 (5th Cir. 1990) (holding that the defendant did not suffer legal prejudice when the plaintiffs moved for voluntary dismissal to attempt to circumvent the district court's ruling that Louisiana law applied, which could limit the plaintiffs' remedies, and stating that the defendant "will not be stripped of an absolute defense"); *Templeton v. Nedlloyd Lines*, 901 F.2d 1273, 1276 (5th Cir. 1990) (per curiam) (affirming district court's dismissal without prejudice and rejecting the defendant's arguments that it would suffer legal prejudice by facing suit in state instead of federal court and by "los[ing] some perceived tactical advantage by trying the case to a jury rather than to the court"); *Davis v. USX Corp.*, 819 F.2d 1270, 1276 (4th Cir. 1987) (holding that "the mere prospect" that the plaintiff would pursue state law claims in state court did not amount to legal prejudice)).

also noted a decision from our court affirming the district court's finding of legal prejudice when "the dismissal of a party would have rendered the remaining parties unable to conduct sufficient discovery to untangle complex fraud claims and adequately defend themselves against charges of fraud." *Id.* (citing *Hyde & Drath v. Baker*, 24 F.3d 1162, 1169 (9th Cir. 1994)).

But even if a dismissal without prejudice in these circumstances would cause legal prejudice, none of these circumstances is present here. Defendants do not contend that a dismissal without prejudice would leave them unable to secure the discovery necessary to adequately defend themselves. *See id.* They do not assert that they would lose a statute of limitations defense, or a jury trial, or a federal forum.[9] Instead, Defendants lose the benefit of a scheduling order, which established the deadline to amend the pleadings. But the loss of a scheduling order is not "prejudice to some legal interest, some legal claim, some legal argument." *Id.*; *see also Durham v. Fla. E. Coast Ry. Co.*, 385 F.2d 366, 368 (5th Cir. 1967) (when ruling on a motion for voluntary dismissal, "[t]he crucial question to be determined is, [w]ould the defendant lose any *substantial right* by the dismissal" (emphasis added)); *Manshack*, 915

---

[9] Indeed, at least one court has suggested that even the loss of a statute of limitations defense is not enough to show legal prejudice. *See McCants v. Ford Motor Co.*, 781 F.2d 855, 857–59 (11th Cir. 1986) (defendant did not suffer plain legal prejudice even though it lost statute of limitations defense). *But see Manshack*, 915 F.2d at 174 (discussing *Phillips v. Ill. Cent. Gulf R.R.*, 874 F.2d 984 (5th Cir. 1989), in which the court concluded that "dismissal without prejudice would have legally prejudiced the defendant" when the defendant moved for summary judgment arguing the plaintiff's claims were time-barred, and plaintiff moved to dismiss because "the statute of limitations had not expired" in other jurisdictions).

F.2d at 174 (noting the "fine line" that "sometimes exists between imposing 'plain legal prejudice' and merely subjecting the defendant to another lawsuit," and concluding that the district court's ruling on choice of law issue, which favored the defendant, "was not as definitive as, say, a summary judgment based upon [a state law] defense," and therefore the defendant would not suffer legal prejudice from a dismissal without prejudice). Moreover, Defendants do not suffer legal prejudice merely because Plaintiffs sought leave to amend their complaint before moving for voluntary dismissal, rather than moving for dismissal without first seeking leave to amend. In either circumstance, the burden on Defendants—defending against a new or revised claim— is the same. And to the extent Defendants incurred expenses opposing the motion to amend, the district court can impose costs and fees as a condition of dismissal.

Two additional cases, in circumstances analogous to those presented here, considered whether a dismissal without prejudice would result in legal prejudice. First, in *Hamilton*, one of our earliest cases discussing the legal prejudice standard, we held that legal prejudice does not result "when plaintiff merely gains some tactical advantage" as a result of dismissal. 679 F.2d at 145. We cited *Durham v. Florida East Coast Railway Co.*, to support that proposition, and that case is instructive here. *See id.* (citing *Durham*, 385 F.2d at 368).

Much like this case, *Durham* involved the district court's denial of the plaintiff's motion to amend. "When the case was called for trial," the plaintiff, "alleging that he had discovered new evidence," orally moved for leave to amend his complaint to add a new cause of action. *Id.* at 367. The district court denied the motion, and the plaintiff then moved for voluntary dismissal without prejudice. *Id.* The

defendant objected, and the court sustained the objection and directed the plaintiff to present his case. *Id.* After the plaintiff "announced that he could not proceed with the trial," the district court dismissed the action with prejudice. *Id.*

The Fifth Circuit reversed, concluding "that the district court exceeded the bounds of judicial discretion in dismissing the complaint with prejudice." *Id.* at 369. The court stated that although the plaintiff's attorney "may have been negligent in failing to discover the new evidence sooner," his negligence "was insufficient to justify dismissal of the complaint with prejudice." *Id.* at 368. The court emphasized the "traditional principle" that "dismissal should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second law suit. It is no bar to dismissal that plaintiff may obtain some tactical advantage thereby." *Id.* (quotation omitted). Because "[t]he record [did] not disclose any prejudice to the defendant, had a voluntary dismissal been granted, other than the annoyance of a second litigation upon the same subject matter," the court "reverse[d] and remand[ed] with instructions that the case be reinstated." *Id.* at 369.

In *Durham*, as here, the plaintiff stood to gain a "tactical advantage" by voluntarily dismissing his case: he could circumvent the district court's denial of leave to amend and proceed with his case in a new lawsuit. But even if the plaintiff will gain some edge, that is "no bar to dismissal." *Id.* at 368; *see also Hamilton*, 679 F.2d at 145. Although dismissal without prejudice means Defendants may have to defend against Plaintiffs' revised fraud theory in another case, just as the defendant in *Durham* had to face the plaintiff's new cause of action in a subsequent suit, that does not mean Defendants will suffer legal prejudice.

Second, in *Pontenberg v. Boston Scientific Corp.*, the Eleventh Circuit affirmed the district court's dismissal without prejudice, even though the plaintiff moved for dismissal "after the discovery period had expired and after her expert reports had been excluded from the record as a result of her attorney's failure to timely comply with the expert disclosure requirements of Rule 26." 252 F.3d 1253, 1256 (11th Cir. 2001) (per curiam). The defendant argued that dismissal was inappropriate because it "had invested considerable resources, financial and otherwise, in defending the action," and the plaintiff had failed to diligently prosecute the action. *Id.*

The court rejected this argument, explaining that "[n]either the fact that the litigation has proceeded to the summary judgment stage nor the fact that the plaintiff's attorney has been negligent in prosecuting the case, alone or together, conclusively or per se establishes plain legal prejudice requiring the denial of a motion to dismiss." *Id.* The court further noted that the district court had stated that costs should be assessed against the plaintiff if she refiled. *Id.* at 1260. The court concluded that "[w]here the 'practical prejudice' of expenses incurred in defending the action can be 'alleviated by the imposition of costs or other conditions,' the district court does not abuse its 'broad equitable discretion' by dismissing the action without prejudice." *Id.* (quoting *McCants*, 781 F.2d at 859).

Similarly, here, Plaintiffs moved for dismissal after the district court rejected their revised fraud claim "as a result of [their] attorney's failure to timely comply with the [scheduling order established under] Rule [16]," but that does not "establish[] plain legal prejudice requiring the denial of a motion to dismiss." *See id.* at 1256. Ultimately, Defendants' argument amounts to a complaint that they

should not have to defend against a new theory when Plaintiffs were "negligent in prosecuting the case" and should have amended their complaint sooner. *Id.* But just as in *Pontenberg*, any "practical prejudice" resulting from Plaintiffs' belated amendment can be alleviated by curative conditions, including an award of costs and attorney's fees.

## C

Defendants also argue, for the first time on appeal, that if Plaintiffs' claims were dismissed without prejudice, they would suffer legal prejudice "in future litigation" because Plaintiffs "defaulted on their shrinkage-based and [California Legal Remedies Act] claims . . . through the district court's denial of their motion for leave to amend." Defendants are apparently arguing that a dismissal without prejudice would deprive them of a res judicata defense "in any future case." But we have held that "[g]enerally, arguments not raised in the district court will not be considered for the first time on appeal." *In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 780 (9th Cir. 2014). And even if we were to exercise our discretion to consider this argument, *see Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487 (2008), it would still fail.

Defendants' asserted prejudice from a dismissal without prejudice—that they would lose their "legal interest" in avoiding Plaintiffs' claims or, in other words, that they would lose a res judicata defense—does not amount to legal prejudice. Instead, a dismissal without prejudice under Rule 41(a)(2) anticipates the loss of a potential res judicata defense; that is the nature of a voluntary dismissal without prejudice. *See Concha v. London*, 62 F.3d 1493, 1507 (9th Cir. 1995) (voluntary dismissal without prejudice leaves the plaintiff "free to seek an adjudication of the same issue at

another time"). But this is not "prejudice to . . . some legal argument." *Westlands Water Dist.*, 100 F.3d at 97. Instead, Defendants' argument that they will be prejudiced by the loss of a res judicata defense is merely another form of their unavailing argument that they will suffer legal prejudice because they may have to face future suit on these claims. *See, e.g.*, *Hamilton*, 679 F.2d at 145 ("[T]he mere inconvenience of defending another lawsuit does not constitute plain legal prejudice."); 8 Moore's Federal Practice – Civil § 41.40[5][c] (2023) ("One of the central purposes of Rule 41(a) is to permit the plaintiff to dismiss an action and start over again . . . . Accordingly, it has been frequently held that the mere prospect of a second lawsuit following a voluntary dismissal without prejudice does not constitute plain legal prejudice.").

## D

We also reject Defendants' argument that the district court properly relied on *Russ v. Standard Insurance Co.*, 120 F.3d 988 (9th Cir. 1997), to deny dismissal without prejudice. In *Russ*, the district court granted the plaintiff's motion for voluntary dismissal without prejudice to allow the plaintiff to refile her claims and thus have a second opportunity to make a timely demand for a jury trial, and we reversed. *Id.* at 989. Under our case law, the district court was prohibited from ordering a jury trial under Federal Rule of Civil Procedure 39(b) because the plaintiff's attorney admitted that the reason for the untimely jury demand was inadvertence. *Id.*; *see, e.g.*, *Craig v. Atl. Richfield Co.*, 19 F.3d 472, 477 (9th Cir. 1994) (stating that although Rule 39(b) allows the court to order a jury trial on a motion by a party who has not filed a timely demand for one, the court cannot do so "when the failure to make a timely demand results from an oversight or inadvertence" (quotation

omitted)). We held that the court could not "accomplish under Rule 41(a)(2)" what it was "specifically prohibit[ed]" from doing under Rule 39(b). *Russ*, 120 F.3d at 990.

But we have never extended *Russ* beyond the context of Rule 39(b) and jury trial demands, and Defendants offer no persuasive reason for us to do so now. While the district court there was expressly prohibited from excusing the untimely jury demand, there is no equivalent prohibition on allowing leave to amend the pleadings. To the contrary, the parties agree that the court could have permitted Plaintiffs to amend their complaint under Rule 16. *Russ* is distinguishable on this basis. For these reasons, we conclude that the district court abused its discretion by denying Plaintiffs' motion for voluntary dismissal without prejudice.

E

Finally, we note that Rule 41(a)(2) permits the district court to dismiss a case "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Here, Defendants requested various conditions if the court granted dismissal without prejudice, including an award of partial attorney's fees and costs, but because the district court dismissed Plaintiffs' claims with prejudice, it did not address Defendants' request for conditions.

The district court appeared to believe that, if it granted dismissal without prejudice, it lacked authority to award Defendants some portion of their costs and attorney's fees. But we have repeatedly stated that a district court can award costs and attorney's fees as a condition of dismissal without prejudice under Rule 41(a)(2). *See, e.g.*, *Stevedoring Servs. of Am.*, 889 F.2d at 921 (noting that costs and attorney's fees are "often" imposed upon a plaintiff granted dismissal under Rule 41(a)(2)). Indeed, we have recognized that although

"the expense incurred in defending against a lawsuit does not amount to legal prejudice," a defendant's interest "can be protected by conditioning the dismissal without prejudice upon the payment of appropriate costs and attorney fees." *Westlands Water Dist.*, 100 F.3d at 97. "Imposition of costs and fees as a condition for dismissing without prejudice is not mandatory," however, *id.*, and "a defendant is entitled only to recover, as a condition of dismissal," attorney's fees or costs for work that "is not useful in continuing litigation between the parties," *Koch v. Hankins*, 8 F.3d 650, 652 (9th Cir. 1993).

In reaching the opposite conclusion, the district court relied, in part, on *Heckethorn v. Sunan Corp.*, 992 F.2d 240 (9th Cir. 1993). But that case does not support a conclusion that fees may not be awarded as a condition of dismissal under Rule 41(a)(2).

In *Heckethorn*, the "issue [was] whether [Rule] 41(a)(2) provides an independent base of authority for sanctioning lawyers." *Id*. at 242. We concluded that Rule 41(a)(2) does not independently authorize a court to require the payment of attorney's fees as sanctions against an attorney. *Id*. at 242–43. Because the fee award in that case was an attorney sanction and Rule 41(a)(2) did not authorize imposition of sanctions, we did not need to resolve whether a district court can impose attorney's fees as a condition under Rule 41(a)(2) when dismissing with prejudice. *Id*. Nor did the case involve the issue of whether Rule 41(a)(2) allows an award of fees and costs against a party as a condition of dismissal *without* prejudice. *See id.*

In sum, the district court had discretion to award attorney's fees as a condition of dismissal without prejudice under Rule 41(a)(2). Therefore, we remand for the district

court to consider whether to impose any conditions on the dismissal of this action without prejudice, such as an appropriate amount of costs and fees.[10]

## VI

We have jurisdiction to consider the district court's denial of Plaintiffs' motion for leave to file a second amended complaint and conclude that the district court did not abuse its discretion by denying that motion. But because Defendants failed to demonstrate that they would suffer legal prejudice if the court dismissed Plaintiffs' claims without prejudice, the district court abused its discretion by denying Plaintiffs' motion to dismiss without prejudice. Therefore, we reverse and remand with instructions to dismiss the action without prejudice. We also direct the district court to consider whether any terms should be imposed as a condition of dismissal.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.[11]**

---

[10] The district court also noted that "even if fees were potentially available, [it] would deny Defendants' request on the basis that Defendants have failed to adequately substantiate the reasonableness of the amount of their claimed fees, despite being given two opportunities to do so." The district court on remand, in its discretion, may reconsider or reaffirm its conclusion that Defendants failed to adequately substantiate the reasonableness of their claimed fees.

[11] Each party shall bear its own costs on appeal.

R. NELSON, Circuit Judge, concurring in part and dissenting in part:

More than seven months after the scheduling-order deadline, Plaintiffs sought to amend the First Amended Complaint ("FAC") to add a new defendant and a new theory of fraud. I concur in Section IV of the majority opinion affirming the district court's conclusion that Plaintiffs failed to satisfy "good cause" to amend under Federal Rule of Civil Procedure 16(b)(4). I also concur in Section V.E, holding that fees and costs may be awarded as conditions of a Rule 41 voluntary dismissal.

I dissent from Sections V.A–D because Defendants have shown a proper legal interest to warrant dismissal with prejudice. Rule 16 creates a legal interest and a legal argument that would be lost upon dismissal without prejudice. The majority errs in holding that the district court abused its discretion when it dismissed the FAC with prejudice after Plaintiffs were denied leave to amend their complaint. I respectfully dissent.

I

I begin with the standard of review, abuse of discretion. The bar for establishing such abuse is high: "The abuse of discretion standard requires that we 'not reverse a district court's exercise of its discretion unless we have a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached.'" *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 798 (9th Cir. 2005) (quoting *SEC v. Coldicutt,* 258 F.3d 939, 941 (9th Cir. 2001)).

Applying this deferential review, I would affirm the district court in full. As the majority recognizes, when

deciding a motion to voluntarily dismiss, we require dismissal without prejudice *unless* the defendants would suffer legal prejudice, meaning "prejudice to some legal interest, some legal claim, [or] some legal argument." *Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996).

*Westlands Water District* did not say, as the majority suggests (Op. 22), that a party's failing to prosecute a case and dilatory tactics in seeking dismissal could never constitute legal prejudice. If we established a categorical rule that dilatory litigation tactics failed to show prejudice, we would have said so. But we did not. Instead, we looked to the specific facts of the case. We explained that the plaintiffs, who sought voluntary dismissal only a few months after "the district court denied their motion for a preliminary injunction" and a "month after" efforts to "obtain a stipulated dismissal without prejudice" failed, "were not dilatory." *Id.*

Unlike this case, the facts in *Westland Water District* do not show dilatory litigation tactics. The complaint there was filed on March 9, and the plaintiffs moved to voluntarily dismiss on December 23. *Id.* at 96. The entire case therefore lasted only nine months, two months longer than Plaintiffs' delay here in seeking to amend after the scheduling order's deadline. And the FAC here was filed nearly two years before Plaintiffs sought to amend the complaint a second time. *Westlands Water District*'s holding does not preclude a finding of prejudice based exclusively on delay on these facts. And by failing to distinguish the significant differences between the litigation history in that case and this one, the majority turns *Westlands Water District*'s fact-specific holding on delay into a categorical rule.

The majority also errs in holding that legal prejudice is absent here. And the majority's holding is far more dangerous than it might seem at first blush. Moving forward, any district court that finds legal prejudice from a dismissal following the denial of leave to amend will abuse its discretion. The majority's broad holding does not follow from *Westlands Water District*'s definition of legal prejudice. To the contrary, by not finding legal prejudice here, the majority guts *Westlands Water District*'s recognition that the loss of either a legal interest or a legal argument *is* prejudicial. The majority abandons that definition by interpreting it so narrowly that it becomes a nullity. And there are compelling reasons not to.

The district court's denial of leave to amend the complaint—which we unanimously affirm today— prevented Plaintiffs from adding new parties or claims. The majority wrongly concludes that such a decision will not legally prejudice Defendants, who will no longer be able to rely on a court's scheduling order. If the federal rules are to continue to impose meaningful limits on litigants, all parties—defendants and plaintiffs alike—need to be able to rely on their procedural protections.

## II

Rule 16(b) imposes a "good cause" standard that protects all parties from baselessly departing from scheduling orders. This rule, like all federal rules, must be "construed, administered, and employed by the court . . . to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Beyond that general guiding principle, interpreting the federal rules involves "traditional tools of statutory construction." *Republic of Ecuador v. Mackay*, 742 F.3d 860, 864 (9th Cir. 2014)

(cleaned up). One such rule requires us to "give[] effect to every clause" if possible. *Id.* And "the cardinal rule of statutory interpretation" is "that no provision should be construed to be entirely redundant." *Kungys v. United States*, 485 U.S. 759, 778 (1988). Another "controlling principle is that, when reasonably possible, a statute should be so interpreted as to harmonize all its requirements by giving effect to the whole." *Earle v. Carson*, 188 U.S. 42, 47 (1903).

We have applied such interpretive rules when faced with perceived conflicts among the federal rules. In *Russ v. Standard Insurance Company*, for example, we considered a plaintiff's attempt to "achieve a result prohibited" by one rule by dismissing a case "pursuant to Rule 41(a)(2)." 120 F.3d 988, 989 (9th Cir. 1997). We concluded that even the "broad discretion granted in Rule 41" could not allow a district court to "accomplish indirectly what we have held cannot be accomplished directly." *Id.* The majority is quick to limit *Russ* to "the context of Rule 39(b) and jury trial demands." Op. 31. It reasons that, because the district court below had discretion to permit Plaintiffs to amend their complaint, *Russ* has nothing to say about the circumstances here. I disagree. *Russ*'s reasoning is directly on point if we substitute Rule 16 for Rule 39. In *Russ*, we gave three reasons for our decision, and each applies here.

The *Russ* court first explained that "allowing the district court to accomplish under Rule 41(a)(2) what we specifically prohibit it from doing under Rule 39(b) introduces an unnecessary conflict between these two federal rules." 120 F.3d at 990. The majority introduces just such a conflict here. Under Rule 16, no party can depart from a scheduling order without a showing of good cause. By limiting *Russ* to its facts, the majority creates an escape

hatch from Rule 16's good-cause standard and from any other federal rule other than Rule 39(b).  The majority effectively eliminates Rule 16 from the federal rules in the Rule 41 dismissal context.  Following today's opinion, scheduling orders will no longer impose any meaningful limitation on the way that plaintiffs—but not defendants—litigate cases.  Meanwhile, interpreting legal prejudice to include loss of the benefit from the district court's ruling on the motion to amend would harmonize these rules.  I would interpret the rules to avoid this conflict.  Our cases do not require otherwise.

My conclusion holds even if there is a conflict between Rule 16 and Rule 41 that "cannot be reconciled."  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012) ("Scalia & Garner").  As we explained in *Russ*, our cases "ordinarily . . . follow the more specific rule over one more general, . . . and our specific prohibition on district courts granting jury trials where the parties have failed to comply with Rule 38 must trump the more general discretionary powers of district courts to permit plaintiffs to dismiss under Rule 41(a)(2)."  120 F.3d at 990.  So too here.  Rule 16 requires the scheduling order to "limit the time to . . . amend the pleadings . . . and file motions," Fed. R. Civ. P. 16(b)(3)(A), and provides the "good cause" standard to excuse a party's non-compliance, Fed. R. Civ. P. 16(b)(4).  Because the specific limitations on when a party can violate a scheduling order "come[] closer to addressing the very problem posed by the case at hand," they are "more deserving of credence" and should govern over the general requirements of Rule 41.  Scalia & Garner at 183.

Finally, we reasoned in *Russ* that "to allow leave to discontinue . . . solely [to cure an untimely demand for a jury

trial] would work a discrimination . . . in favor of plaintiffs whose attorneys had been guilty of inadvertent neglect in demanding a jury trial as against defendants similarly situated." 120 F.3d at 990 (cleaned up). "Only plaintiffs can request dismissals without prejudice under Rule 41(a)(2) and thus only plaintiffs could take advantage of this additional avenue to excuse neglect." *Id.* The majority rule likewise favors plaintiffs who do not amend within the time limits of the scheduling order and cannot show good cause for their delay at the expense of defendants. I agree with the majority (Section V.E) that district courts can impose attorney fees and costs as conditions of dismissal without prejudice. But that does not cure the legal prejudice to defendants who should not have to defend against delayed claims or amendments at all, particularly when leave to amend has been rejected by the district court.

In sum, because the three main reasons for rejecting voluntary dismissal in *Russ* apply equally here, we should apply them here. The majority takes a different path and limits *Russ* to its facts. But this flouts the rule that "reasoning central to a panel's decision [i]s binding [on] later panels." *Garcia v. Holder*, 621 F.3d 906, 911 (9th Cir. 2010) (citation omitted). We are even bound by a prior panel's "[w]ell-reasoned dicta." *Enying Li v. Holder*, 738 F.3d 1160, 1165 n.2 (9th Cir. 2013). For that reason, whether or not the reasoning that guided the *Russ* panel was "dicta" or "central" to *Russ*'s holding, it binds us. The majority skirts that binding precedent. This is unwarranted, particularly given the risk of abuse from voluntary dismissals. *Cf. Manshack v. Sw. Elec. Power Co.*, 915 F.2d 172, 174 (5th Cir. 1990) ("The courts must carefully monitor Rule 41(a)(2) voluntary dismissals to insure that they do not engender abuse.").

## III

Even ignoring *Russ*'s binding logic here, legal prejudice still exists.  The majority concludes that the only prejudice to Defendants is the prospect of having to defend against a second lawsuit.   But permitting a subsequent lawsuit nullifies the district court's denial of leave to amend by subjecting Defendants to a claim that we unanimously agree plaintiffs did not have good cause to add.  *See Kamal v. Eden Creamery, LLC*, No. 18-CV-1298 TWR (AGS), 2021 WL 4460734, at \*4 (S.D. Cal. Sept. 29, 2021) ("Plaintiffs are clear that the Motion for Voluntarily Dismissal is intended to negate the Court's ruling denying the Motion for Leave to Amend.  In other words, Plaintiffs seek to avoid the consequences of their own lack of diligence and deprive Defendants of the benefit of the Court's Rule 16(b) ruling."); *see also* Section IV.  This does not simply give plaintiffs like Kamal "some tactical advantage" from the dismissal, *Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143, 145 (9th Cir. 1982), or increase defendants' "uncertainty" from "the threat of future litigation," *Westlands Water Dist.*, 100 F.3d at 96.  Instead, it is a deprivation of the legal interest shared by Defendants here—and other defendants moving forward—in the procedural protections of Rule 16(b)'s good-cause requirement, which protects parties from abusive procedural tactics.

The majority wrongly countenances such a result.  So surely the majority must rely on clear precedent to reach this conclusion.  Not so.  The best the majority can muster is outdated, out-of-circuit precedent.  To start, *Durham v. Florida East Coast Railway Company*, 385 F.2d 366 (5th Cir. 1967), was decided 56 years ago when the federal rules did not yet include the current good-cause requirement of Rule 16(b).  *See* Advisory Committee's Notes on Fed. R.

Civ. P. 16's 1983 Amendment. There was thus no textual conflict between two rules (Rule 41 and Rule 16) like the majority creates today.

Then, in *Pontenberg v. Boston Scientific Corporation*, 252 F.3d 1253, 1259 (11th Cir. 2001) (per curiam), the Eleventh Circuit considered itself bound by *Durham*.[1] The Eleventh Circuit did not consider how the 1983 addition of Rule 16 might impact the prejudice analysis; it simply held that "circuit precedent" forbade a finding of legal prejudice when faced with "delay alone, in the absence of bad faith." *Id.* at 1259.

By contrast, most courts around the country have held that excessive delay can legally prejudice a party. *See Doe v. Urohealth Sys., Inc.*, 216 F.3d 157, 160 (1st Cir. 2000); *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990); *Gross v. Spies*, 133 F.3d 914 (4th Cir. 1998) (unpublished); *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994); *Pace v. S. Express Co.,* 409 F.2d 331, 334 (7th Cir. 1969); *Paulucci v. City of Duluth*, 826 F.2d 780, 783 (8th Cir. 1987); *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997). I would join this overwhelming weight of authority, particularly where, as here, a contrary conclusion creates a conflict between two rules that we should read harmoniously.

Nor is delay the only harm facing Defendants. A recent decision of the Eleventh Circuit illustrates my point. *Dobbs v. Allstate Indem. Co.*, No. 21-13813, 2022 WL 1686910 (11th Cir. May 26, 2022) (per curiam) (unpublished). There,

---

[1] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (all Fifth Circuit decisions decided before September 30, 1981, bind the Eleventh Circuit).

like in *Pontenberg*, the district court excluded the testimony of the plaintiff's expert witness after the plaintiff failed to disclose certain aspects of the expert's opinion as required by Rule 26. *Id.* at *2. The plaintiff replied by moving to dismiss under Rule 41(a). *Id.* at *6. In denying that motion, the district court explained that the "true reason for" Dobbs's "wanting to dismiss his case was because he disagreed with the district court's adverse ruling." *Id.* The Eleventh Circuit agreed, affirming that "voluntary dismissal would not have been proper" given the "equities in th[e] case" and the district court's conclusion that the plaintiff's tactics— seeking dismissal after an adverse procedural ruling—were unfair. *Id.* Rather than allowing a plaintiff invoking Rule 41 to overcome the requirements of Rule 26, the Eleventh Circuit took a different path—notwithstanding *Pontenberg*'s conclusion that delay alone is not enough to show prejudice. The majority dismisses this argument by holding that losing a *res judicata* defense is nothing more than facing a second litigation. Op. 29–30. Not so. We have never held that; nor does the precedent cited by the majority support that conclusion. If Defendants were merely facing a second lawsuit, the majority may have a point. But losing a *res judicata* defense must be a legal interest or legal argument if *Westlands Water District*'s definition of legal prejudice has any meaning.

We should guarantee that Rule 16(b)'s good-cause requirement continues to impose reasonable limitations on the ability of plaintiffs and defendants alike to skirt a court's scheduling order. We agreed with the district court that Plaintiffs had not shown good cause to amend their complaint because of their lack of diligence. The majority's separate reversal of the dismissal with prejudice undermines our first holding. It would legally prejudice Defendants to

allow Plaintiffs to dismiss their suit to avoid the results of the district court's conclusion vis-à-vis amendment. I respectfully dissent.